James W. PHILEN

v.

The STATE of Texas, Appellee.

No. 66889.

Court of Criminal Appeals of Texas, En Banc.

Dec. 5, 1984.

442

Thomas A. Dunn, Tyler, for appellant.

Melvin D. Whitaker, Dist. Atty., Palestine, Robert Huttash, State's Atty., Austin, for the State.

Before the court en banc.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for murder. The jury assessed punishment at ten (10) years' imprisonment.

On appeal appellant contends the trial court erred in overruling his motions to set aside the indictment for lack of a statutory speedy trial; that the court erred in overruling his special requested charge on self-defense and the right to shoot and continue to shoot so long as he was in danger; and that the court erred in admitting into evidence inflammatory and gruesome photographs of the body of the deceased.

The appellant was arrested on July 4, 1979, commencing the 120 day time period in which the State had to be ready for trial in a felony case. Article 32A.02, Secs. 1 and 2, V.A.C.C.P.; *Lee v. State*, 641 S.W.2d 533 (Tex.Cr.App.1982). Appellant made bail on July 6, 1979, and was subsequently indicted on August 23, 1979. He was arraigned on September 20, 1979, at which

1. The prosecutor did not state on what date the State was actually ready nor was he asked.

time the case was set for trial on October 1, 1979.

The docket sheet reflects that on October 1, 1979 (89th day after July 4th), the case was "Passed on motion of State because pre-trial motions have not been heard." November 1, 1979 was the 120th day after July 4th. On November 19, 1979, the appellant filed his first motion to set aside the indictment for lack of a speedy trial under the Texas Speedy Trial Act (Article 32A.02, supra).

On November 26, 1979, the court conducted a hearing on said motion.

The district attorney, the only prosecutor for the 173rd District Court, testified he was ready for trial then (November 26th), and had been ready for trial within the 120 day period from July 4th.[1] He acknowledged that he had not filed a formal announcement of "ready" at any time. The prosecutor explained that on October 1, 1979, he had announced "not ready" and requested a "continuance" or "pass" from the court because he was expecting some additional lab reports; that the appellant announced "ready" subject to a hearing on his pre-trial motions which could not be reached that date. He observed that the appellant did not oppose his motion to "pass" or object to the court's action in granting the same.

The district attorney explained that there were three counties in the 173rd Judicial District, and that there were no criminal dockets set by the district court in Henderson County between October 1st and November 26th, and this was the first opportunity to announce ready in open court.

The prosecutor testified he had not subpoenaed the witnesses for trial in the instant case on November 26, 1979, because there were two cases, another murder case and a rape case, ahead of appellant's case on the court's docket, and the witnesses had been subpoenaed in those cases.[2] He admitted he would have to "scramble" to

2. Later testimony showed there were 15 or 20 cases set for November 26, 1979, and the appellant's case was either sixth or seventh on the docket.

get his witnesses if appellant's case went to trial, but he was "ready." He listed the State's witnesses, two of whom were in the courtroom, and stated he thought he could contact the others, but admitted that he did not know the physical whereabouts of a number of the witnesses at the moment.

The district attorney was the only witness at the hearing.

The court overruled the motion to set aside the indictment. When the attorneys informed the court they expected the trial to consume three or four days, the court detailed other settings in Anderson and Henderson Counties in the days to follow and explained the case could not be tried that week. The court offered to select a jury the next day and to commence trial the following Monday, or offered to reset the case for December 10, 1979. Appellant's counsel stated he preferred the setting on December 10th and the case was reset for that date.

On December 10, 1979, the appellant filed a second motion to set aside the indictment for lack of a speedy trial. A hearing was conducted on that date. Much of the same matters were rehashed. Appellant elicited from the district attorney that he (D.A.) had not received until the week of December 3rd a letter report from the Department of Public Safety dated October 4, 1979. The district attorney stated the report had apparently been in the sheriff's office, and despite inquiries, it had not been received by his office until the week of December 3rd. He explained that while the report was helpful, it was not essential to his being ready for trial.

The second motion to set aside the indictment was overruled.

■ It is settled that the Speedy Trial Act addresses itself to prosecutorial delay rather than to the judicial process as a whole. *Barfield v. State*, 586 S.W.2d 538 (Tex.Cr.App.1979); *Stringer v. State*, 632 S.W.2d 340 (Tex.Cr.App.1982); *Valadez v. State*, 639 S.W.2d 941 (Tex.Cr.App.1982). Thus, the question of the preparedness of the prosecution does not encompass the trial court and its docket. *Barfield v. State*, supra. There is no requirement in the Speedy Trial Act that the State actually attempt to set a case for trial within the 120 day statutory limit for felony cases. *Phillips v. State*, 659 S.W.2d 415, 419 (Tex. Cr.App.1983). And the Act does not make it mandatory that a case be tried within the allowed period of time. *Ostoja v. State*, 631 S.W.2d 165 (Tex.Cr.App.1982); *Phillips v. State*, 651 S.W.2d 745, 746 (Tex.Cr.App. 1983).

■ It is well established that if a defendant files his motion to set aside the indictment for failure to adhere to the provisions of the Speedy Trial Act the State must declare its readiness then and at times required by the Act. Such declaration is a prima facie showing the State is ready for trial as the statute requires, and such prima facie showing may be made at the hearing on the motion to set aside the indictment by a declaration that is ready then and has been ready within the statutory limits. *Barfield v. State*, supra. When this is done, the burden shifts to the defense to show otherwise. See *Fraire v. State*, 588 S.W.2d 789 (Tex.Cr.App.1979); *Callaway v. State*, 594 S.W.2d 440 (Tex.Cr. App.1980); *Lopez v. State*, 628 S.W.2d 82 (Tex.Cr.App.1982); *Scott v. State*, 634 S.W.2d 853, 854 (Tex.Cr.App.1982). Failure to overcome a prima facie case made by the State as to the speedy trial issue will justify a trial court's denial of a defendant's motion. *Scott v. State*, supra; *Apple v. State*, 647 S.W.2d 290 (Tex.Cr.App.1983).

■ On October 1st the appellant had not invoked the Speedy Trial Act nor could he in view of the time frame. The State announced "not ready" and the case was reset. At the hearing on appellant's motion on November 26th the evidence was undisputed that there was no criminal docket in the district court in Henderson County from October 1st to November 26th. This delay was due to the trial court and its docket comprising three counties, and not attributable to the State. The prosecutor stated he was ready then (November 26th) and was ready within the statutory period

of time.[3] The appellant sought to show the State was not ready because it had not subpoenaed its witnesses for trial on November 26th. A claim that subpoenas have not been issued is insufficient to rebut the State's announcement of ready. *See Garcia v. State*, 625 S.W.2d 831 (Tex.App.—Houston [14th Dist.] 1981) (review refused). The prosecutor stated he would have to "scramble" for his witnesses but he was ready. The appellant failed to overcome the prima facie case made by the State's announcement of "ready." The court did not err in overruling appellant's first motion to set aside the indictment.

 Although there were other settings in two counties, the court offered to select the jury the next day (November 27th) and commence the trial the following Monday. Appellant's counsel opted, however, for a resetting on December 10th. The Speedy Trial Act does not provide for dismissal because of delays in which the defendant has been a willing participant or that are attributable to the crowded docket of the court. See *Cockrell v. State*, 632 S.W.2d 664 (Tex.App.—Ft.Worth 1982). The delay between November 26th and December 10th was not attributable to the State.

 Appellant's second or amended motion sought to relitigate the speedy trial issue. The only new evidence at the hearing revealed that the district attorney had not personally received a D.P.S. letter report dated October until the week of December 3rd. The prosecutor denied this prevented him from being ready. This was not rebutted. The court did not err in overruling the second motion.

Next the appellant contends the trial court erred in overruling his objection to the court's charge and his special requested charge on the right of self-defense, specifically the requested instruction that if he had the right to act in self-defense and open fire on the deceased, he had the right to continue shooting until all the danger of his life had passed.

Early on it was held that the necessity of such a charge in a given case depends upon the facts and the manner in which the issues are submitted to the jury. *Conn v. State*, 158 S.W.2d 503 (Tex.Cr.App.1941); *Boaz v. State*, 89 Tex.Cr.R. 515, 231 S.W. 790, 794 (1920). See also *Smith v. State*, 411 S.W.2d 548 (Tex.Cr.App.1967). And while the charge should normally be given if raised by the evidence, it was recognized that "[S]ome difficulty arises in making application of the rule under the facts of particular cases." *Key v. State*, 192 S.W.2d 563 (Tex.Cr.App.1946).

Given the circumstances of the instant case, it is doubtful that appellant was entitled to the requested instruction under the cases decided while the former Penal Code was in effect. In *Goodman v. State*, 134 Tex.Cr.R. 280, 114 S.W.2d 885 (1938), the refusal to so charge was held not error where there was (1) no evidence that the defendant fired shots after the deceased fell, (2) no evidence that the combatants changed position, and (3) the shots were fired without any noticeable intermission, it being a continuous and rapid transaction. See also *Barkley v. State*, 152 Tex.Cr.R. 376, 214 S.W.2d 287 (1948); *Walker v. State*, 98 Tex.Cr.R. 663, 267 S.W. 988 (1924).

In *McElroy v. State*, 455 S.W.2d 223 (Tex.Cr.App.1970), it was not error to refuse the charge where there was no showing that there were any shots fired after the deceased fell, no evidence that after the defendant began to fire that the parties materially changed positions and no evidence of continuing danger. Further, the evidence was undisputed the shots were fired in rapid succession. See also *Mays v. State*, 563 S.W.2d 260 (Tex.Cr.App.1978).

Appellant relies upon *Smith v. State*, 411 S.W.2d 548 (Tex.Cr.App.1967), where it was held that the defendant may, under the facts of continuing danger and a change in

---

**3.** Simply because the record showed no announcement of "ready" by the State during the 120 day period does not prove that the prosecution was not ready for trial within that period. *Prescott v. State*, 649 S.W.2d 671 (Tex.App.—Corpus Christi 1983).

the position of the parties, be entitled to such a charge or instruction though the shots are fired in quick succession.

Be that as it may, we need not belabor the facts of this case to determine the applicability of these cases decided under the former Penal Code. We observe that appellant's objection and special requested charge apparently sought to invoke the law of self-defense regarding the right to shoot and continue to shoot as it existed under the 1925 Penal Code. No reference is made to the 1974 Penal Code and its provisions.

The Practice Commentary to V.T.C.A., Penal Code, § 9.32 (Deadly Force in Defense of Person), states in part:

"Section 9.32 restores the issue of excessive deadly force to Texas law: if the actor can protect himself short of killing, for example, he must do so on penalty of forfeiting his justification for the unnecessary portion of the deadly force used....

"Section 9.32(2) breaks sharply with Texas legal tradition by requiring a person to retreat before using deadly force if an ordinary person in the actor's situation would have done so...."

In *Sternlight v. State*, 540 S.W.2d 704, 705 (Tex.Cr.App.1976), it was stated:

"One of the most drastic changes made in the new penal code is that before deadly force may be used in self-defense the actor (defendant) is required to retreat if a reasonable person in the actor's (defendant's) situation would have retreated. V.T.C.A., Penal Code, Sec. 9.32(2)." See and cf. *Teal v. State*, 543 S.W.2d 371 (Tex.Cr.App.1976).

In the instant case the court denied the special requested charge and instructed the jury in accordance with V.T.C.A., Penal Code, §§ 9.01(3), 9.32 and 9.33, and applied the law to the facts. The jury was instructed on the law of self-defense in part that: "When a person is attacked with unlawful deadly weapon, or he reasonably believes he is under attack or attempted attack with unlawful deadly force, and there is created in the mind of such person a reasonable expectation or fear of death or serious bodily injury, then the law excuses or justifies such person in resorting to deadly force *by any means at his command* to the degree that he reasonably believes immediately necessary, viewed from his standpoint at the time, to protect himself from such attack or attempted attack ...." (Emphasis supplied.)

Viewing the instructions on the law of self-defense, the jury was instructed in effect that regardless of when or where the fatal shots were fired, the appellant should be acquitted if he was acting in self-defense. See *Dominquez v. State*, 532 S.W.2d 95 (Tex.Cr.App.1976).

■ The essence of the requested charge was repetitious in effect of that given in the main charge. When the charge refusal is substantially the same as that given by the court, no harm is shown. *Aranda v. State*, 506 S.W.2d 221, 225 (Tex. Cr.App.1974); *Dominquez v. State*, supra. Appellant's rights were adequately protected.

■ The trial court did not err in overruling the objection and the special requested charge. See *Stevens v. State*, 671 S.W.2d 517 (Tex.Cr.App.1984).

Lastly the appellant complains that the trial court, over objection, admitted gruesome and inflammatory photographs of the deceased.

State's Exhibit No. 4 was a photograph of the body of the deceased as it was found by the officers. No objections were made to the introduction of the exhibit. State's Exhibit Nos. 6, 7 and 12 were also photographs of the deceased at the scene as viewed by the officers. No. 6 was a closeup of the wounds on the body, No. 7 was to show the distance of the body from the first landing on the stairs, and No. 12 was a view of the body from the front entrance of the house. The evidence reflected that in all the pictures the body had not been moved but was in the condition as found by the officers. Appellant objected to Exhibit Nos. 6, 7 and 12 on the grounds that they

were inflammatory, prejudicial, cumulative, repetitious, etc. Appellant argues that after the introduction of Exhibit No. 4, the State's action in introducing the other pictures was unnecessary and done to prejudice the jury.

It has been consistently held since 1972 that if a verbal description of the body and scene is admissible, a photograph depicting the scene is likewise admissible. *Martin v. State,* 475 S.W.2d 265 (Tex.Cr. App.1972). See also *Kelly v. State,* 621 S.W.2d 176 (Tex.Cr.App.1981); *Evans v. State,* 622 S.W.2d 866 (Tex.Cr.App.1981). There is nothing in the record to indicate the photographs were offered solely to inflame the minds of the jurors. The ground of error is overruled. *Kelly v. State,* supra, p. 182.

The judgment is affirmed.

CLINTON, J., concurs in the result.

TEAGUE, Judge, dissenting.

I am compelled to dissent to the reasons the majority gives for overruling appellant's contention that the trial court erred in refusing his requested charge that if he had the right to act in self-defense and open fire on the deceased, he had the right to continue shooting until all the danger to his life had passed.

Without stating why "it is doubtful that appellant was entitled to the requested instruction," the majority concludes that the requested charge "was repetitious in effect of that given in the main charge [on self-defense]," thus enabling it to overrule appellant's ground of error.

I will agree that where the evidence raises the defense of self-defense, and the trial court has correctly instructed the jury on the law of self-defense, counsel for the defendant is permitted to argue to the jury that the defendant had the right to continue shooting his adversary, though the mortal wound may have already been inflicted. However, I am unable to agree that such an instruction, standing alone, is sufficient to protect the right of the defendant to receive a fair trial in accordance with due process and due course of the law.

As we all know, jurors usually give great deference, as they should, to the remarks that a trial judge might make during the course of a criminal trial. When it comes to the jury charge, experience also teaches us that jurors invariably pay extremely close attention to what the trial judge states is the law of the case and the law as applied to the facts of the case. Without an instruction on the right to continue shooting, when the defendant had the right of self-defense to shoot in the first place, I believe that it is asking too much of a juror to depend upon what counsel for the parties might argue is the law. Furthermore, I believe it is reasonable to assume that the average person, though he might believe that the defendant had the right to shoot another person in self-defense in the first place, would probably question whether that right gives the defendant the additional right to continue shooting his aversary until the danger or apparent danger has ceased, or as long as it reasonably appeared to the defendant, as viewed from his standpoint at the time, that he was still in danger.

Therefore, I am unable to agree that such an additional instruction, on the right to continue shooting, is repetitious and unnecessary to protect the right of the defendant to receive a fair and impartial trial. I therefore respectfully dissent.